GROSVENOR *against* THE FARMERS AND MECHANICS BANK.

Where negotiable promissory notes for money only, indorsed in blank, were left
   with the *F. & M.* bank, by *A,* a debtor to that institution, as security for his
   debt ; and while such notes were thus in the possession of the *F. & M.*
   bank, and before any of them had been paid, or become payable, *B,* a credit-
   or of *A,* attached them, by process of foreign attachment, they being in
   amount and value more than sufficient to satisfy *A's* debt to the *F. & M.*
   bank ; on the *scire-facias* against the *F. & M.* bank, it was held, that such
   notes were *choses in action* and  not subject to this process ; consequently,
   the plaintiff could not recover.

THIS was a *scire-facias* in a process of foreign attachment against *The Farmers and Mechanics Bank*, as the trustees of *E. M. Morgan & Co.*, absent and absconding debtors.

The cause was tried at *Hartford, January* term, 1839, before *Huntington*, J.

Hartford,
June, 1839.

Grosvenor
*v.*
The Farmers
and Mechanics
Bank.

On the trial, the defendants, on being called for that purpose, by the plaintiff, disclosed as follows : That on the 5th of *April,* 1837, when the copy of the original writ was left in service with the defendants, *E. M. Morgan & Co.* were indebted to the defendants in the sum of 100,620 dollars, 43 cents ; that at the same time, the defendants held bank and insurance stocks of the value of 69,020 dollars, 55 cents, pledged by *E. M. Morgan & Co.* for the sole purpose of securing the payment of their indebtedness to the defendants, which have all since been applied to that debt, leaving thereof unpaid the sum of 31,599 dollars, 88 cents.

The plaintiff then offered to prove, by the testimony of the defendants, the following facts, which, he claimed, they were bound to disclose : That at the time the copy of the original writ was left in service with the defendants, they had in their possession sundry promissory notes for money only, made by various persons and conpanies residing in *New- York, Philadelphia,* and other places, which notes were all payable to order, and indorsed in blank, by the payees therein named respectively, but not indorsed by *E. M. Morgan & Co.* ; that none of these notes had become due, when the copy was left ; that the notes were delivered to the defendants, by *E. M. Morgan & Co.*, as further security for their indebtedness to the defendants ; that they became payable in 1837 and 1838, and were of sufficient amount and value to satisfy the plaintiff's judgment over and above the indebtedness of *E. M. Morgan & Co.* to the defendants.

The defendants objected to making any disclosure as to these facts, on the ground that if they were true, they did not conduce to shew, that at the time the copy was left in service, the defendants had in their hands any effects of *E. M. Morgan & Co.*, liable to be attached, by the process of foreign attachment, or that any debt was due from the defendants to *E. M. Morgan & Co.* liable to be so attached.

The court sustained the objection, and rejected the evidence. No other evidence being offered, the issue was found for the

*Hartford,*
June, 1839.
_____
Grosvenor
*v.*
The Farmers
and Mechanics
Bank.

defendants. The plaintiff thereupon moved for a new trial, for the rejection of the evidence offered by him.

*Hungerford,* in support of the motion, contended, That the notes in question, indorsed in blank, were effects in the hands of the defendants, and liable to be taken in execution and applied in satisfaction thereof. Such notes are not treated as *choses in action,* but as personal chattels. There is no difficulty in levying an execution on them. They are placed on the footing of bank bills—of money itself. In this state, an officer may levy an execution on money, and apply it; though in *England,* the law is otherwise. A sale of these notes at the post would vest the title in the purchaser, so that he could sustain a suit thereon in his own name. *Brush* & al. v. *Scribner,* 11 *Conn. Rep.* 388. 391. 396. 398. *Bradley* v. *Hunt,* 5 *Gill & Johns.* 4. *Spencer* v. *Blaisdell,* 4 *N. Hamp. Rep.* 198. *Wookey* v. *Pole* & al. 4 *Barn. & Ald.* 1. *Handy* v. *Dobbin,* 12 *Johns. Rep.* 220. *Holmes* v. *Nuncaster,* 12 *Johns. Rep.* 395. *McNeilage* v. *Holloway,* 1 *Barn. & Ald.* 218. 221. *Bailey on Bills,* 103. 117. *n.* 1 *Sw. Dig.* 796. Justice and morality require that all a man's property be made subservient to the payment of his debts. All "goods and effects" of the absent and absconding debtor, are subject to this process. *Stat.* 237. *tit.* 37. *s.* 1. Are not these notes "effects?"

*H. Perkins,* contra, insisted, 1. That nothing can be attached, by this process, that cannot be taken by execution, except debts. 9 *Petersd. Abr.* 712. *Francis* v. *Nash, Ca. Temp. Hardw.* 53. *The Maine Fire and Marine Insurance Company* v. *Weeks* & al. 7 *Mass. Rep.* 438. And there must be actual possession of *goods* and *effects,* or a certain *debt,* to charge the trustee. *Rundlet* v. *Jordan* & al. 3 *Greenl.* 47. *Andrews* v. *Ludlow,* 5 *Pick.* 30. *Klinefelter* & al. v. *Blaine* & al. 3 *Dana,* 468. *Grant* & al. v. *Shaw,* 16 *Mass. Rep.* 341.

2. That promissory notes are *choses in action,* and are not "goods and chattels," within the statute regulating civil actions; nor "goods and effects," within the law of foreign attachment. 1 *Sw. Dig.* 170. *Fitch* v. *Waite,* 5 *Conn. Rep.* 118. 123. *The Maine Fire and Marine Insurance Company* v. *Weeks* & al. 7 *Mass. Rep.* 438. *Perry* v. *Coates*

& al. 9 *Mass. Rep.* 537.    *N. H. I. F. Co.* v. *Platt* & al. 5

3. That no *debt* was due from the defendants to *E. M.*     Grosvenor
*Morgan & Co.*, the absent and absconding debtors.                v.
                                                              The Farmers
                                                             and Mechanics
                                                                  Bank.

*I. Perkins,* on the same side, was stopped by the court.

HUNTINGTON, J.   The evidence offered by the plaintiff,
was rejected on the authority of *Fitch* v. *Waite,* 5 *Conn. Rep.*
117.   The just and reasonable doctrine established by that
case, was considered applicable to the one now before the
court.   We there held, that an attorney, in whose hands
promissory notes had been placed for collection, before he had
received any money on them, or had become liable to pay
over any part of the sums due on them, was not the debtor of
the person depositing them, within the meaning of the act au-
thorizing the collection of debts by foreign attachment.   Until
one of these events happened, he owed the principal nothing ;
and, consequently, was not his debtor.   We also held, that
notes not negotiable, or if negotiable, not indorsed, so deposited,
and in the possession of the attorney, uncollected, could not be
attached as goods and effects in his hands, by virtue of the pro-
visions of that act ; because they were *choses in action,* which
could not be sold on execution.   We further held, that an at-
tachment, from its nature, is immediate, and not prospective ;
and therefore, that in a process of foreign attachment, the pre-
cise period when the debt is attached, is the time of service.
These principles have received the sanction of courts of great
respectability.   *Francis* v. *Nash, Ca. Temp. Hardw.* 53.
*Staple* v. *Bird, Barnes* 214.   *McCarthy* v. *Goold,* 1 *Ball
& B.* 387.   *Knight* v. *Criddle,* 9 *East,* 48.   *Padfield* v.
*Brine,* 3 *B. & B.* 294.   *Stewart* v. *Marquis of Bute,* 11
*Ves.* 657.   *Insurance Co.* v. *Weeks* & al. 7 *Mass. Rep.* 438.
*Perry* v. *Coates* & al. 9 *Mass. Rep.* 537.   *Andrews* v. *Lud-
low* & al. 5 *Pick.* 28.   *Lupton* v. *Cutler* & al. 8 *Pick.* 298.
*Jackson* v. *Willard,* 4 *Johns. Rep.* 40.   *Denton* & al. v.
*Livingston* & al. 9 *Johns. Rep.* 96.   *Handy* v. *Dobbin,* 12
*Johns. Rep.* 220.   *Mann* v. exrs. of *Mann,* 1 *Johns. Ch.
Rep.* 231.   *Spencer* v. *Blaisdell,* 4 *N. H. Rep.* 196.   *Insu-
rance Co.* v. *Platt,* 5 *N. H. Rep.* 193. 502.   *Rundlett* v.
*Jordon,* 3 *Greenl.* 47.

*Hartford,*
June, 1839.

Grosvenor
*v.*
The Farmers
and Mechanics
Bank.

In the present case, none of the notes held by the defendants, were due at the time of the service of the attachment; nor had any of them been paid, in whole or in part. The defendants were not, therefore, the debtors of the absconding debtors, and could not be charged as such.

Were the notes, "goods and effects," within the meaning of the act? Or were they *choses in action,* not subject to this process? The case turns on this point. The plaintiff insists, that negotiable promissory notes indorsed in blank, are now regarded, for most legal purposes, as *choses in possession,* as chattels, or as money or bank notes; and therefore, that the case of *Fitch* v. *Waite,* in which the notes were either not negotiable, or if negotiable, were not indorsed, does not govern the case before us. In support of these views, we have been referred to several authorities. *Bailey on Bills,* 103. 117. note. 1 *Sw. Dig.* 796. *Bradley* v. *Hunt,* 5 *Gill & Johns.* 54. *McNeilage* v. *Holloway,* 1 *B. & A.* 218. *Brush* v. *Scribner,* 11 *Conn. Rep.* 388. We think no such distinction between negotiable paper indorsed in blank, and notes not negotiable or unindorsed, as has been suggested by the plaintiff's counsel, exists. They are all mere securities for a debt, or the performance of a contract; and therefore, *choses in action.* The rights created by them are in action only, not in possession. Their owners are possessed, not of the sums of money specified in them, but of a right to receive those sums from the persons holding, or supposed to hold them. It is true, that a suit on a bill of exchange indorsed in blank, may be instituted in the name of the *bona fide* holder, who has the legal interest in it; while the action on a note not negotiable, which has been assigned, must be commenced at law, in the name of the promisee. But neither the bill nor the note is a *chose* in possession. They both furnish evidence of a debt, but cannot be considered as goods and effects, if regard be had either to the legal meaning, or the natural and common import of those words. At the time the statute relating to foreign attachments was enacted, negotiable notes were unknown to our law; and consequently, could not have been in the contemplation of the legislature. The law of *Louisiana,* mentioned in *Bayley on Bills,* may, perhaps, be founded on some statute provision, or derived from the principles of the civil law, which govern, so extensively, contracts made in that state. The case in *Gill*

Hartford,
June, 1839.

Grosvenor
v.
The Farmers
and Mechanics
Bank.

*& Johnson* does not decide, that bills and notes may be seized and sold on execution. Nor does the case of *Brush* v. *Scribner* countenance the doctrine, that such instruments, when negotiable and indorsed in blank, are goods and effects, which may be taken on a *fieri facias*. So far from this, we referred with approbation, to the remarks of *Abbott*, Ch. J., in *Wookey* v. *Pole* & al., 4 *B. & A.* 1., that notes and bills have been *distinguished* from goods, in regard to their transfer, for the convenience of trade and commerce, and in regard to their being mercantile and commercial instruments, and by law negotiable; and that an exchequer bill is of the same nature as notes and bills of exchange. Like them, it is neither valuable nor useful in itself, as goods and chattels, such as a horse, a picture or a pipe of wine are; it is valuable only as entitling the holder to receive, at some future time, a certain sum of money, which is a value precisely of the same nature as the value of a note or bill. It must be admitted, that in the case cited from 1 *B. & A.* 218., the judges speak of a negotiable security as a personal chattel, or as a middle case between a *chose in action* and a *chose* in possession. These suggestions were not required to justify the decision which was made in that case; and their correctness was certainly not confirmed, if it was not denied, in the subsequent case of *Richards* v. *Richards*, 2 *B. & Adol.* 447., where Lord *Tenterden*, referring to that case, says, "without considering whether the observations made in that case are correct, we think the present differs from it." He adds, "we are of opinion, that a promissory note, in the ordinary course of things, is a *chose in action;*" and in this opinion we concur. The *dictum* in 1 *Swift's Dig.* 796., is unsupported by any authority. We are aware, it is said that bills and notes are forfeitable to the crown, under the general denomination of chattels; and that by the same description, they may be the subject of reputed ownership within the statute of bankruptcy, 21 *Jac.* 1. *c.* 19. *s.* 11. But it is sufficient to remark, that the decisions, which, it is supposed, extend the meaning of the word in these cases, are founded on reasons wholly inapplicable to the present case, as will be seen by an examination of them. *Bullock* v. *Dodds*, 2 *B. & A.* 258. *Hornblower* & al. v. *Proud* & al. *Id.* 327.

The serious, if not irreparable injury, which might result either to the creditor or debtor, by adopting a rule, which

*Hartford,*
*June, 1839.*

*Grosvenor*
*v.*
*The Farmers*
*and Mechanics*
*Bank.*

would subject negotiable paper, indorsed in blank, to the operation of the process of garnishment, as being goods and effects; the insuperable difficulties, which would attend the sale of it on execution; the want of adequate means to ascertain its value, so that on a sale, justice would be done to both the parties in the execution; the inability to determine the equitable liens which may exist upon it, furnish sufficient reasons to withhold our sanction to the experiment now proposed to be made. When to these reasons, are added those which arise from the considerations, that this paper possesses the essential qualities of *choses in action;* that all the authorities concur that a *chose in action* cannot be taken and sold on a *fieri facias;* that no precedent has been cited in support of the plaintiff's claim; we do not hesitate deliberately to adhere to the case of *Fitch* v. *Waite;* to declare that the principles there established are just and legal; that they are entirely applicable to the present case; and consequently, that the superior court, in rejecting the offered evidence, decided correctly.

The motion for a new trial must, therefore, be denied.

In this opinion the other Judges concurred.

New trial not to be granted.